```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
  UNITED STATES OF AMERICA            :

              v.                      :         NOTICE OF MOTION
                                                 23 Cr. 603 (ALC)
  ROBERT RUMPH,                       :

                    Defendant.        :
------------------------------------------------------X
```

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT RUMPH'S MOTION TO SUPPRESS EVIDENCE

TAMARA L. GIWA, ESQ.
Federal Defenders of New York
Attorney for Defendant
**Robert Rumph**
52 Duane Street - 10th Floor
New York, New York 10007

By SYLVIE LEVINE, ESQ.
Assistant Federal Defender

TO:   DAMIAN WILLIAMS, ESQ.
      United States Attorney
      Southern District of New York
      New York, New York 10007
Attn: **WILL KINDER, ESQ.**
      Assistant United States Attorney

**TABLE OF CONTENTS**

I. FACTUAL SUMMARY…………………………………………………………………..1

II. LEGAL ARGUMENT………………………………………………………………………1

A. **Mr. Rumph was Stopped, Arrested, and Detained Unlawfully**…………..………….1

B. **Mr. Rumph's Car was Searched Illegally** …………………………………………….4

C. **The Evidence Obtained as a Result of the Illegal Detention of Mr. Rumph and Illegal Search of his Vehicle is Fruit of the Poisonous Tree**………………………..6

D. **Mr. Rumph Moves to Controvert the Search Warrants and for a Franks Hearing**..6

E. **The Court Should Conduct an Evidentiary Hearing to Resolve the Factual Disputes and Make Credibility Determinations in this Case**………………………..9

III. CONCLUSION……………………………………………………………………...….10

# TABLE OF AUTHORITIES

**Cases**

Arizona v. Gant, 556 U.S. 332 (2009) …………………………………………………..4, 5

Franks v. Delaware, 438 U.S. 154 (1978) …………………….……………………passim

Grice v. McVeigh, 873 F.3d 162 (2d Cir. 2017) …………………………………………2

Kansas v. Glover, 140 S. Ct. 1183 (2020) ……………………………………..………..4

Katz v. United States, 389 U.S. 347 (1967) ……………………………………………..4

Mapp v. Ohio, 367 U.S. 643 (1961) …………………………………………………….1

Mincey v. Arizona, 437 U.S. 385 (1978) ……………………………………….……...1

Murray v. United States, 487 U.S. 533 (1988) ………………………………….………6

Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991) …………………………………….………2

Terry v. Ohio, 392 U.S. 1 (1968) ……………………………………………………..passim

United States v. Awadallah, 349 F.3d 42 (2d Cir. 2003) ……………………….………...7

United States v. Bailey, 743 F.3d 322 (2d Cir. 2014) ……………………….…………..2-3

United States v. Delossantos, 536 F.3d 155 (2d Cir. 2008) …………………………….....1

United States v. Ferguson, 758 F.2d 843 (2d Cir. 1985) ………………………….……...7

United States v. Fiseku, 915 F.3d 863 (2d Cir. 2018) …………………….…………...2, 3

United States v. Jiau, 734 F.3d 147 (2d Cir. 2013) ……………………………………..10

United States v. Jones, 565 U.S. 400 (2012) …………………………………………….5

United States v. Lahey, 967 F. Supp. 2d 698 (S.D.N.Y. 2013) ………………….………..7

United States v. Marin, 669 F.2d 73 (2d Cir. 1982) …………………………………...2

United States v. Newton, 369 F.3d 659 (2d Cir. 2004) …………………………………2, 3

United States v. Patterson, 25 F.4th 123 (2d Cir. 2022) ………………………………….4

United States v. Pena, 961 F.2d 333 (2d Cir. 1992) …………………….……………...9

United States v. Pena, 351 F. Supp. 3d 723 (S.D.N.Y. 2019) ……………………….………3

United States v. Perea, 986 F.2d 633 (2d Cir. 1993) ……………………….………………..2

United States v. Rajaratnam, 719 F.3d 139 (2013) ……………………………………………7

United States v. Sebbern, 10 Cr. 87 (SLT), 2012 WL 5989804 (E.D.N.Y. Nov. 30, 2012) ………6

United States v. Ulbricht, 14 Cr. 68 (KBF), 2014 WL 5090039 (S.D.N.Y. Oct. 10, 2014), aff'd, 858 F.3d 71 (2d Cir. 2017) ……………………….……………………………………….6

Wong Sun v. United States, 371 U.S. 471 (1963) ……………………….…………………..6

**Other Authorities**

U.S. Const. Amend. IV …………………………………………………………………..passim

Robert Rumph, by undersigned counsel, respectfully moves to suppress all evidence obtained in violation of the Fourth Amendment to the United States Constitution as a direct or derivative result of the warrantless and unreasonable seizure of Mr. Rumph and search of his car on October 1, 2023, and the fruits of those unlawful actions, and to controvert the search warrants. In the alternative, Mr. Rumph requests an evidentiary hearing on these matters and any further relief as this Court deems just and proper.

## I.    FACTUAL SUMMARY

Mr. Rumph hereby incorporates the facts as laid out in the Affirmation of Sylvie Levine, Esq. ("Levine Aff.").

## II.   LEGAL ARGUMENT

### A.    Mr. Rumph was Stopped, Arrested, and Detained Unlawfully

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment. Mincey v. Arizona, 437 U.S. 385, 390 (1978). Absent an established exception to the warrant requirement, evidence obtained thereby must be suppressed. Mapp v. Ohio, 367 U.S. 643, 654-55 (1961). On a suppression motion, the government bears the burden of proof to establish probable cause or reasonable suspicion, as the case may be. See United States v. Delossantos, 536 F.3d 155, 158 (2d Cir. 2008).

There is no question that Mr. Rumph was seized by police officers when he was removed from his vehicle, handcuffed, and escorted away from his car, surrounded by at least 6 police officers, two of whom remained holding his arms behind his back, monitoring the handcuffs.

1

See Levine Aff. ¶ 9.

      Here, the police officers' actions ripened into a de facto arrest. "[P]robable cause is necessary when police restrain an individual in a manner that, though not technically an arrest, is nonetheless so intrusive as to be 'tantamount' to an arrest." United States v. Marin, 669 F.2d 73, 81 (2d Cir. 1982). An arrest is distinct from a brief investigatory detention when "the level of intrusiveness rises [in] an encounter between the police and a citizen." Posr v. Doherty, 944 F.2d 91, 98 (2d Cir. 1991). "If the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause." Id. (internal citations omitted). Moreover, "to satisfy the reasonableness standard, officers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes." United States v. Newton, 369 F.3d 659, 674 (2d Cir. 2004) (emphasis added). A determination regarding the appropriate level of intrusiveness is a fact-specific, case-by-case inquiry. See United States v. Perea, 986 F.2d 633 (2d Cir. 1993). Courts consider factors such as whether the defendant was handcuffed, the number of suspects, the nature of the crime the officers are investigating, the number of law enforcement personnel on the scene, the movement of the defendant, the length of time, and other circumstances. See id. (collecting cases).

      Handcuffing a defendant is a common factor that courts rely on to determine that an investigatory stop has ripened into an arrest. Indeed, the Second Circuit has made clear that it is only under "unusual circumstances" that "an officer may handcuff a suspect without 'transform[ing] a Terry stop into an arrest." United States v. Fiseku, 915 F.3d 863, 870 (2d Cir. 2018) (quoting Grice v. McVeigh, 873 F.3d 162, 168 (2d Cir. 2017)); see also United States v.

2

Bailey, 743 F.3d 322, 341 (2d Cir. 2014) ("conclud[ing] that police here exceeded the reasonable bounds of a Terry stop when they handcuffed Bailey, [thereby committing] a Fourth Amendment error"). In United States v. Pena, 351 F. Supp. 3d 723, 733 (S.D.N.Y. 2019), the Court found that the police needed probable cause (which they did not have) when 10 police officers outnumbered the two defendants and both defendants had been frisked and no weapons were found and they were handcuffed for more than 30 minutes. The Court held: "the instant case is not sufficiently 'unusual' to justify a departure from the rule that '[h]andcuffs are generally recognized as a hallmark of a formal arrest.'" (citing Newton, 369 F.3d at 676).

    The level of intrusiveness used by the police here – immediately handcuffing Mr. Rumph and moving him away from his vehicle – was far greater than necessary for the investigatory stop they had been directed to make. The facts simply did not require it: Mr. Rumph was the only individual in the vehicle; he kept his hands visible at all times; he was immediately compliant with the officers' requests; he was polite to the officers; it was broad daylight; and at least seven armed NYPD officers were on the scene. Levine Aff. ¶¶ 7, 9. Moreover, the only information the police had at the time was that the vehicle stop was "in regards to a gunpoint robbery"; no additional information was provided. Id. ¶ 8, 11. Thus, there was no justification for the heightened level of intrusion. Cf. Fiseku, 915 F.3d at 870-71 (finding there was no de facto arrest when an officer was patrolling alone in a dark rural area at night, could not be sure that back up would arrive, was investigating an ongoing crime, and handcuffed one suspect so he could focus on two other suspects). The police needed probable cause for such a seizure, but they did not have it.

    Even if the Court were to find that Mr. Rumph was not under arrest at the time the police removed him from the vehicle, handcuffed him, and detained him, the police still exceeded their

authority to conduct a Terry stop. The "very purpose of an investigatory stop is to confirm or dispel the reasonable suspicion that justifies the stop in the first place." United States v. Patterson, 25 F.4th 123, 138 (2d Cir. 2022) (internal citations omitted); see also Kansas v. Glover, 140 S. Ct. 1183, 1191 (2020) ("[T]he presence of additional facts may dispel reasonable suspicion."). As soon as Officer Ayala arrived on the scene, he realized that Mr. Rumph was not Robber-1. Levine Aff. ¶ 12. Moreover, it was three months after the July 7 robbery – a period of time during which cars can change hands, and various drivers can use a vehicle. In addition, nothing else on Mr. Rumph's person or in his interactions with the police by the side of the car indicated that Mr. Rumph had anything to do with the July 7 robbery. (If the police had asked some additional investigatory questions about the July 7 robbery, as part of Terry stop, and had learned new, incriminating information, then the calculus might have changed; instead, they asked Mr. Rumph no questions about the robbery.) Therefore, these immediate conclusions by the police, the developing facts – and lack thereof – should have dispelled any possible reasonable suspicion that the police had formed, and the investigatory stop should have been terminated. The officers' decision to continue to detain Mr. Rumph, while handcuffed, when he was surrounded by armed police officers and being completely cooperative, exceeded the scope permitted by the Fourth Amendment.

**B.     Mr. Rumph's Car was Searched Illegally**

Warrantless searches "are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)) (internal quotation marks omitted). The officers' warrantless search of Mr. Rumph's vehicle (and search of items within the vehicle) also violated the Fourth Amendment. As described above, Mr. Rumph was

already handcuffed, surrounded by officers, and escorted away from the car. The police had an opportunity to observe him and the main investigating officer determined that Mr. Rumph was not Robber-1. Still, the officers decided to return to the vehicle and search it, including re-opening various doors, and opening various compartments and bags within the car without a warrant to do so. Levine Aff. ¶ 13. The fruits of this warrantless search must be suppressed. See United States v. Jones, 565 U.S. 400 (2012).

With Mr. Rumph out of the car, in handcuffs, and moved away from the vehicle, the search was necessarily evidentiary in nature rather than justified by any genuine safety concern. Gant, 556 U.S. at 346. It could, therefore, only be justified by probable cause – which the officers did not have. Id. Because three months had elapsed since the robbery, and because cars can easily change hands and drivers, there was no cause to believe that the vehicle contained fruits of the robbery in October. (As discussed below, Officer Ayala later claimed the search of the vehicle was "incident to a lawful arrest." See Levine Aff. ¶ 15. For the reasons described above, there was no lawful arrest at the time the police searched the vehicle. Indeed, the police themselves claim he was only arrested after the search of the vehicle, when they discovered the outstanding ICard.[1])

---

[1] Even if the Court were to conclude that the search of the vehicle before the officers knew about the ICard was "incident to" the arrest for the ICard, the search of the vehicle would still be illegal under the Fourth Amendment. "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." See Gant, 556 U.S. at 351. Here, Mr. Rumph was not even close to reaching distance of the passenger compartment; namely because he had been moved to the rear of the car and was surrounded by officers who had handcuffed him behind his back. And, it was not reasonable to believe that the vehicle compartment contained evidence of the offenses detailed in the ICard. The ICard specified there was probable cause to believe that Mr. Rumph had left the scene of an accident, in violation of VTL 600, six months prior, on April 19, 2023. Levine Aff. ¶ 14. And, the car alleged to have been involved in the accident was not the car Mr. Rumph was driving on October 1, 2023; the car in the accident was a 2004 silver Honda Pilot. See id. Thus, nothing

**C.     The Evidence Obtained as a Result of the Illegal Detention of Mr. Rumph and Illegal Search of his Vehicle is Fruit of the Poisonous Tree**

"Evidence seized in violation of the Fourth Amendment is subject to exclusion at trial – hence, references to 'the exclusionary rule' in Fourth Amendment jurisprudence." United States v. Ulbricht, 14 Cr. 68 (KBF), 2014 WL 5090039, at *4 (S.D.N.Y. Oct. 10, 2014), aff'd, 858 F.3d 71 (2d Cir. 2017).  The exclusionary rule "extends as well to the indirect as the direct products of such invasions." Wong Sun v. United States, 371 U.S. 471, 484 (1963) ("a search unlawful at its inception may [not] be validated by what it turns up").  "The exclusionary rule encompasses the so called 'fruit of the poisonous tree' doctrine, developed in the Fourth Amendment context in Wong Sun." United States v. Sebbern, 10 Cr. 87 (SLT), 2012 WL 5989804, at *3 (E.D.N.Y. Nov. 30, 2012).

Here, if the Court finds that law enforcement officers' detention of Mr. Rumph and the search of his vehicle exceeded their authority under the Fourth Amendment, then the fruits of those actions – including the items found during the search, the warrants obtained to conduct further searches, and any post-arrest statements, Levine Aff. ¶¶ 15, 16 – must be suppressed.  See Murray v. United States, 487 U.S. 533, 536-7 (1988) (the exclusionary rule "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search….").

**D.     Mr. Rumph Moves to Controvert the Search Warrants and for a Franks Hearing**

The Fourth Amendment dictates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  A search warrant "must be voided and

---

about the ICard or the crime from which it stemmed justified a search of Mr. Rumph's vehicle on October 1.

6

the fruits of the search excluded" when an affiant knowingly or recklessly includes false statements in or omits material information from an affidavit, and a corrected affidavit would not support a finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). To prevail, a defendant must show that the warrant affiant made recklessly false statements or omissions that were material to the issuing court's finding of probable cause. See id.

Material omissions by police officers can mislead a magistrate when making a probable cause determination. United States v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985) (holding that "[o]missions from an affidavit that are claimed to be material are governed by the same rules" as deliberately falsified information). Franks protects against omissions that are designed to mislead or that are made in reckless disregard of whether they would mislead. See United States v. Rajaratnam, 719 F.3d 139, 154 (2013), citing United States v. Awadallah, 349 F.3d 42, 67-68 (2d Cir. 2003); see also United States v. Lahey, 967 F. Supp. 2d 698, 710 (S.D.N.Y. 2013). If the defendant meets the Franks standard, then the "search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, 438 U.S. at 156.

Here, the NYPD applied for two search warrants. First, to search the two phones recovered from Mr. Rumph's car. See Levine Aff. ¶ 15. Second, to obtain historical cellphone location information. See id. In filing both applications on October 11, 2023, Officer Ayala, "being sworn," wrote:

> Based on my personal observations of RUMPH, my review of surveillance video of the July 7, 2023 Robbery, and my review of NYPD officer body camera video of RUMPH's arrest, I know that RUMPH's physical appearance resembles Robber-1. In particular, RUMPH has a limp which resembles the limp of Robber-1.

See id.

This paragraph deliberately and misleadingly omits material information known to Officer Ayala: namely, that Officer Ayala had already concluded that Mr. Rumph was <u>not</u> Robber-1: Shortly after detaining Mr. Rumph on October 1, 2023, while being recorded on BWC, Officer Ayala told a fellow officer: "He doesn't … like right now, just looking based off his goatee, he doesn't fit the guy that went in with the gun, but we'll figure that out." Levine Aff. ¶ 12.

Moreover, on October 1, 2023, Officer Ayala explained the case to another officer, including the role that he believed Mr. Rumph played: "We got one male with a gun, goes into the store, does the robbery but he was dropped off and picked up by this … what we believe to be the individual driving this car." <u>Id.</u> In other words, as of October 1, Officer Ayala was clear that at most, he suspected Mr. Rumph of being the driver – <u>not</u> Robber-1.

Furthermore, Officer Ayala knew, or should have known, that Mr. Rumph failed to meet the victims' description of Robber-1 in a vital way: Mr. Rumph was 7 inches taller than the robber. On the date of the robbery, the victims reported that Robber-1 was "short." The description NYPD generated that day was for a "[m]ale, about 5'5, dark skin." <u>Id.</u> Mr. Rumph's height is 6'0, as Officer Ayala observed himself on October 1. <u>Id.</u> As such, Officer Ayala did not reasonably believe, and should not have reasonably believed, that Mr. Rumph was Robber-1 when he wrote the October 11 Affidavits seeking warrants.

Despite these facts, the Affidavit strongly – and erroneously – suggest to the authorizing Magistrate that Mr. Rumph is Robber-1. At worst, this was an overt misrepresentation. At best, these two omissions were made in reckless disregard of whether they would mislead. Either way, the misleading facts mandate suppression of the fruits of the two search warrants (namely,

8

searches of the two recovered phones, and any cell phone location information), or, in the alternative, a Franks hearing.

The warrant applications also include misinformation regarding the reason Mr. Rumph was pulled over on October 1 and the subsequent actions taken by the police officers. In both warrants, Officer Ayala swore:

> I alerted NYPD patrol officers in the vicinity that I saw a vehicle I believed could be the Getaway Car. NYPD officers began to follow Vehicle-1, and conducted a traffic stop of Vehicle-1 after the driver ran a red light.
>
> NYPD officers determined that RUMPH had an open NYPD warrant for an unrelated offense in the 32nd Precinct. He was placed under arrest. NYPD officers conducted a search of Vehicle-1 incident to the arrest of RUMPH.

Levine Aff. ¶ 15.

For the reasons described in section A, supra, there is no basis in the record for those assertions. The officers did not conduct a "traffic stop;" they were investigating the July 7 robbery. And, there is no credible evidence that any traffic infraction was committed. See Levine Aff. ¶ 11. And, the NYPD officers searched the vehicle before arresting Mr. Rumph for anything (and before they knew about the ICard – not "warrant"). Levine Aff. ¶ 14. Given these additional material misrepresentations, there are additional grounds to suppress the searches authorized by the warrants, or, in the alternative, to hold Franks hearing, at which Officer Ayala's credibility can be evaluated.

E.  **The Court Should Conduct an Evidentiary Hearing to Resolve the Factual Disputes and Make Credibility Determinations in this Case**

At a minimum, there are critical factual disputes regarding the detention of Mr. Rumph and search of his vehicle that must be resolved at a hearing. See United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). In particular, the Court must make credibility findings regarding the

officers' claims. A District Court is best situated to make "factual determinations going to witness credibility." United States v. Jiau, 734 F.3d 147, 151 (2d Cir. 2013).

The defense has demonstrated that the NYPD officers who made the car stop and detained Mr. Rumph had no independent reason(s) whatsoever to do so. The sole officer who claims to have had justification – Officer Ayala – is not credible. For example, Officer Ayala immediately concluded that Mr. Rumph was not Robber-1, but repeatedly made decisions and representations to the contrary. His misrepresentations – including in sworn statements submitted to the Magistrate Judge – demand further inquiry by this Court before being credited. Officer Ayala is the main actor behind all of the law enforcement decisions at issue in this case; the Court cannot rely on him on the record before it. A hearing is required.

### III. CONCLUSION

For the above reasons, Mr. Rumph asks that the Court grant the relief he seeks herein and any further relief the Court deems just and proper.

Respectfully submitted,
/s/
Sylvie Levine, Esq.
Federal Defenders of New York