UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

UNITED STATES OF AMERICA,

        Plaintiff,

-against-                                        1:23-cr-00603 (ALC)

                                                    **OPINION AND ORDER**

ROBERT RUMPH,

        Defendant.
───────────────────────────────────────────

**ANDREW L. CARTER JR., United States District Judge:**

Defendant Robert Rumph ("Defendant") moves to suppress all evidence obtained in violation of the Fourth Amendment to the United States Constitution as a direct or derivative result of the warrantless seizure of Defendant Rumph and search of his car on October 1, 2023, and the fruits of those unlawful actions, as well as to controvert the phone and cellsite search warrants. For the reasons set forth below, the Defendants' motion to suppress the challenged evidence and request to controvert the search warrants is hereby **DENIED**.

## BACKGROUND

### I. July 7, 2023 Armed Robbery

The Court assumes the parties' familiarity with the facts, which are set forth more fully in the Criminal Complaint. On July 7, 2023, at approximately 10:25 a.m., a man ("Robber-1") wearing a mask, hat, gloves, sunglasses, and hooded sweatshirt entered a smoke shop in the vicinity of 217 East 167th Street, Bronx, New York. Criminal Complaint ¶ 4(a). Robber-1 was carrying a black tote bag and wearing a black hooded sweatshirt, black pants, blue gloves, white mask, black sunglasses, and white baseball cap with a black brim with the words "New York" on

1

it. *Id*. Robber-1's hat had a distinctive brown stain on the side. *Id*. ¶ 5(b). After entering the smoke shop, Robber-1 approached the counter, drew a black handgun from the tote bag, displayed it to two store clerks, and forced the clerks into the smoke shop's back room while brandishing the gun. *Id*. ¶ 4(b). Once inside the back room, Robber-1 aimed his gun at the store clerks and demanded money. *Id*. ¶ 4(c)-(e). One of the clerks retrieved approximately $400 in cash from the register in the main room and put the cash inside of Robber-1's black tote bag at Robber-1's direction. *Id*. ¶ 4(e). Robber-1 then tied the two clerks' hands together behind their backs using duct tape, stole one of the clerk's cellphones, and left through the front door of the smoke shop. *Id*. ¶ 4(f)-(h)).

While Robber-1 was committing the robbery, a second robber ("Robber-2") was waiting nearby in a red Ford Escape with white side doors, only on the driver's side (the "Getaway Car"). Robber-2 arrived in the vicinity of the smoke shop at approximately 9:40 a.m. *Id*. ¶ 4(j)-(k)). He parked the Getaway Car one block north of the smoke shop near Sherman Avenue and East 168th Street. *Id*. ¶ 4(j). The second robber intermittently sat in, cleaned, walked around, and stood near the Getaway Car, from approximately 9:40 a.m. to 10:30 a.m. *Id*. ¶ 4(k). At approximately 10:30 a.m., Robber-2 got into the Getaway Car and drove to the intersection of Sherman Avenue and East 167th Street. *Id*. ¶ 4(l). Robber-1 then entered the front passenger side of the Getaway Car and Robber-2 drove the Getaway Car southbound on Sherman Avenue. *Id*. ¶ 4(n).

**II.     October 1, 2023 Search of the Getaway Car**

On October 1, 2023, Detective Kenneth Ayala with the Joint Robbery Task Force of the New York City Police Department ("NYPD") and the Bureau of Alcohol, Tobacco, and Firearms was driving southbound on the FDR Drive in the vicinity of the 125th Street exit at

approximately 1:30 p.m. when he observed a red Ford Escape with white doors that matched the description of the Getaway Car. *Id*. ¶ 5(a). Detective Ayala then alerted NYPD patrol officers in the vicinity that he believed he saw a vehicle that he believed could be the Getaway Car. *Id*. NYPD patrol officers then followed the vehicle and conducted a traffic stop after the driver ran a red light. *Id*. The driver identified himself as Robert Rumph. *Id*. Detective Ayala then approached the vehicle and explained to Rumph that there were a "couple reasons" that the officers pulled Rumph over, including for running a red light on Second Avenue and 116th Street. Levine Aff. ¶ 9. NYPD officers then conducted a search of Vehicle-1 incident to the Defendant's arrest. Criminal Complaint. ¶ 5(b). Inside the vehicle, the officers found a baseball cap that resembled the baseball cap and a pair of sunglasses that Robber-1 wore during the armed robbery. *Id*.

### III.   Phone and Cellsite Warrants

On October 11, 2023, the United States Attorney's Office applied to Magistrate Judge Valerie Figueredo for two search warrants: (1) to search a Black Samsung Galaxy Cellphone and a Blue AT&T Calypso Cellphone, USAO_862-84, USAO_885-901, and (2) for cellphone location information for one of the phones found during the search of the car. USAO_885-901. Detective Ayala submitted sworn affidavits in support of these two search warrants, in which he states, "I am the case agent with primary responsibility for this investigation and have been personally involved in this investigation." *Id*. Regarding his belief that Defendant Rumph was involved in the July 7, 2023 armed robbery, Detective Ayala explained that "[b]ased on my personal observations of RUMPH, my review of surveillance video of the July 7, 2023 Robbery, and my review of NYPD officer body camera video of RUMPH's arrest, I know that RUMPH's physical appearance resembles Robber-1. In particular, RUMPH has a limp which resembles the

3

limp of Robber-1. Based on the foregoing, I believe that Vehicle-1 is the Getaway Car from the July 7, 2023 Robbery, and that RUMPH was involved in the July 7, 2023 Robbery." *Id*.

Furthermore, regarding his belief regarding the October 1, 2023 stop, arrest, and search of Defendant Rumph's vehicle, Detective Ayala stated, "At approximately 1:30 p.m. on October 1, 2023, I was driving southbound on the FDR Drive in the vicinity of the 125th Street exit when I observed a red Ford escape with white doors ("Vehicle-1") matching the description of the Getaway Car. I alerted NYPD patrol officers in the vicinity that I saw a vehicle I believed could be the Getaway Car. NYPD officers began to follow Vehicle-1, and conducted a traffic stop of Vehicle-1 after the driver ran a red light. The occupant of Vehicle-1 identified himself as ROBERT RUMPH. NYPD officers determined that RUMPH had an open NYPD warrant for an unrelated offense in the 32nd Precinct. He was placed under arrest. NYPD officers conducted a search of Vehicle-1 incident to the arrest of RUMPH." *Id*.

## PROCEDURAL HISTORY

On October 19, 2023, Defendant Robert Rumph was arrested pursuant to an arrest warrant. ECF No. 2. On November 16, 2023, the Government filed an indictment against the Defendant alleging that he knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery in violation of Title 18 United States Code Section 1951(b)(1) and conspired with others to rob a smoke shop in the vicinity of 212 East 167th Street in the Bronx, New York. ECF No. 6.

On May 28, 2024, the Defendant filed a motion to suppress evidence obtained the stop and search of Rumph's vehicle on October 1, 2023 and the searches of two phones found in Rumph's vehicle that were executed pursuant to search warrants. ECF Nos. 20-22. On June 19, 2024, the Government filed its opposition to the motion to suppress. ECF No. 26. On July 3,

2024, the Defendant filed its reply brief in further support of the motion to suppress. ECF No. 29. On July 23, 2024, the Court ordered an evidentiary hearing related to the Defendant's motion to suppress evidence obtained from the stop, seizure, and search of the Defendant and his car. ECF No. 30. The Court determined that the Defendant had not met its burden to justify an evidentiary hearing, pursuant to *Franks*, regarding the warrant authorizing the search and seizure of the two cell phones removed from the Defendant's car. *Id*.

On August 7, 2024, this Court held a suppression hearing, where Detective Kenneth Ayala of the NYPD Joint Robbery Task Force testified. ECF Nos. 33-35. On September 6, 2024, the Defendant filed a post-hearing submission. ECF No. 40. On September 22, 2024, the Government filed a letter response in opposition. ECF No. 43. On September 26, 2024, the Defendant filed a post-hearing submission reply brief. ECF No. 44. The Courts considers this motion fully briefed.

## LEGAL STANDARD

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. An officer has probable cause to make an arrest when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (citations omitted). On a motion to suppress evidence for failure to satisfy the Fourth Amendment, "[t]he defendant 'bears the burden of proving ... that he had a legitimate

5

expectation of privacy.'" *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)). That burden is carried by the submission of sworn declarations. *See, e.g., United States v. White*, 2018 WL 4103490, at *8 (S.D.N.Y. 2018) ("That burden 'is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge.' ") (quoting *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995)). *United States v. Ray*, 541 F. Supp. 3d 355, 379 (S.D.N.Y. 2021).

In determining whether probable cause existed, courts must examine the "totality of the circumstances" and "consider those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006) (internal quotation marks and emphasis omitted). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). The determination of probable cause requires "a practical, common-sense decision, whether given all the circumstances ... there is a fair probability that contraband ... will be found in a particular place." *United States v. Harwood*, 998 F.2d 91, 96 (2d Cir.1993) (internal quotation marks and citation omitted) or that "[a] person of reasonable caution would be justified in believing that there was at least 'a probability or substantial chance of criminal activity.'" *United States v. Medina*, 459 Fed.Appx. 31, 32 (2d Cir.2012) (quoting *Illinois v. Gates*, 462 U.S. 213, 244, n. 13 (1983)). The Supreme Court has cautioned that, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (citing *Sibron v. New York*, 392 U.S. 40, 62–63 (1968)).

## DISCUSSION

### I. Stop of Defendant Rumph's Car

This Court finds that Detective Ayala's stop of Defendant Rumph's car was lawful. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Therefore, traffic stops must satisfy the Fourth Amendment's reasonableness limitation, which "requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009) (alterations and emphasis omitted). Even a "minor" traffic violation meets this standard and requires probable cause or reasonable suspicion for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994). While lawful at its inception, a traffic stop "can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

Here, NYPD officers were permitted under the Fourth Amendment to make a traffic stop after Detective Ayala observed that the Defendant committed a traffic violation when he ran a red light at 116th Street and Second Avenue. "[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir.2009). After recognizing the vehicle as the Getaway Car, Detective Ayala followed Rumph's car as it exited onto 116th street and drove westbound. Hear Tr. at 35. Video surveillance corroborates that Detective Ayala informed Rumph that he had been pulled over because he ran the red light. Ex. A. Defendant also

7

concedes that Detective Ayala told the Defendant that there were a "couple reasons" why he was pulled over, one of which was due to the traffic violation. Levine Aff. ¶ 9.

In addition to the traffic violation, Detective Ayala also had reasonable suspicion to believe that Defendant's vehicle was involved in the July 7, 2023 armed robbery. The Supreme Court has held that the Fourth Amendment permits a warrantless investigative stop "when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014)."'Terry requires that a police officer have only reasonable suspicion that criminal activity may be afoot to justify an investigatory stop. Reasonable suspicion requires considerably less of a showing than probable cause.'" *Goldberg v. Town of Glastonbury*, 453 F. App'x 40, 41 (2d Cir. 2011) (quoting *United States v. McCargo*, 464 F.3d 192, 197 (2d Cir. 2006)). "In reviewing the reasonableness of a Terry stop, [the court] ask[s] whether there was a 'particularized and objective basis' for suspicion of legal wrongdoing under the 'totality of the circumstances.'" *United States v. Simmons*, 560 F.3d 98, 103 (2d Cir. 2009) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). While a reasonable suspicion requires more than a hunch, *Terry*, 392 U.S. at 27, "[t]he standard is 'not high.'" *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)).

Here, Detective Ayala testified that on October 1, 2023, he recognized the Rumph's vehicle when he was heading southbound on Franklin D. Roosevelt East River Drive ("FDR Drive") between 125th and 116th Street. Hear. Tr. 31. ("[T]his vehicle passes in front of me, . . . and I see that it's a red SUV, it has two white doors on it. And just as it passes in front, I could see that it's a red Ford Escape, two white doors, all red . . . this same vehicle matched the very same vehicle that I was investigating since July 7 for the robbery incident."). He also noticed that

8

Rumph's car had a white-colored temporary license plate, which was similar to the Getaway Car. *Id*. at 31-32. He then placed a radio call to other NYPD officers to assist him to stop a vehicle that was wanted in connection with a gunpoint robbery. Hear. Tr. at 37-38. He did not mention the traffic violation on the radio call because his priority was to alert NYPD officers to stop the vehicle. Hear. Tr. at 44. ("At that moment, the priority was giving the direction in which the vehicle was going, giving the call, and waiting for assistance to stop the car. It wasn't a priority at that moment to transmit why the defendant took a light over on Second Avenue and 116. The priority was giving the direction in which it was going and alerting the other officers where to stop the vehicle."). Indeed, Detective Ayala had no doubt that the Rumph's vehicle matched the appearance of the Getaway Car used in the July 7, 2023 armed robbery. *Id*. at 35. This is sufficient under the Fourth Amendment for NYPD officers to have stopped the Defendant's vehicle.

## II.  Probable Cause to Search Defendant Rumph's Car

This Court finds that the NYPD officers had probable cause to search Defendant Rumph's car on October 1, 2023. Under the "automobile exception" to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam*); Carroll v. United States*, 267 U.S. 132, 151–62 (1925); *see also California v. Acevedo*, 500 U.S. 565, 569–70 (1991). Furthermore, when the police possess probable cause to believe a vehicle contains contraband, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle." *United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) (internal citation and quotation marks omitted).

Here, the evidence presented at the August 7 suppression hearing established that law enforcement had probable cause to search Rumph's vehicle on October 1, 2023. Probable cause exists "where the facts and circumstances within ... [an officer's] knowledge and of which [the officer] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). Detective Ayala had a reasonable belief that the red Ford escape with white doors and a temporary white license plate matched the appearance of the Getaway Car from the July 7, 2023 armed robbery. At the suppression hearing, Detective Ayala testified that he had no doubt that Rumph's car was the same car that he had seen in the video surveillance footage from the July 7, 2023 robbery. ECF No. 35 at 35. The unique features of the car – two white driver–side doors on a red Ford Escape – further underscore Detective Ayala's belief that the model, make, and colors of Rumph's car matched the Getaway Car.

Defendant argues that there was no probable cause to believe that the car contained proceeds of the July 7, 2023 robbery when the car was pulled over on Second Avenue on October 1, 2023 approximately three months later "during which time cars can easily change hands; the car was being driven in a different borough than where the robbery took place; and law enforcement had no identifying information about the driver on the date of the robbery." ECF No. 29 at 2; *see also* ECF No. 40 at 4. This argument is unpersuasive. The Second Circuit has emphasized that "[w]hile there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d

10

Cir.1993) (citations omitted). The Court of Appeals has identified a number of factors relevant to a staleness inquiry, including: "[t]he currency and specificity of the information forming the basis" for probable cause, "the reliability of the sources of information, the nature of the alleged illegal activity, the duration of that activity in the location in question, and the nature of the evidence being sought." *United States v. McGrath*, 622 F.2d 36, 41–42 (2d Cir.1980). Central to the staleness question in this case is "the nature of the property sought" and its relationship to the location in which it was sought. *United States v. Paul*, 692 F.Supp. 186, 193 (S.D.N.Y. 1988). If evidence of the crime "can be expected to remain in one location over a period of time," probable cause can continue to exist. *United States v. Salomon-Mendez*, 992 F. Supp. 2d 340, 347 (S.D.N.Y. 2014) (internal citations omitted). With respect to a car used in a robbery, "evidence of a vehicle's ownership," which can link the car to a suspect, "would be evidence that could be used in the prosecution" of the robbery. *Id*. at 348.

    Here, evidence from the robbery was likely to remain in the Getaway Car for a considerable period of time and could be used to identify the perpetrators of the July 7, 2023 robbery, including vehicle registration documents and articles worn by Robber-1 or Robber-2 on the day of the robbery. Courts in this district have held that registration papers for a vehicle, which are generally kept within the glove compartment or elsewhere within the vehicle, are "unlikely to be removed from a car at any point when the car is still in use." *Id.* at 348 & n.3. During the vehicle stop of Rumph's car, NYPD officers found temporary Georgia vehicle registration, which is consistent with temporary license plates on the Getaway Car, and noted that the car was also registered under Defendant Rumph's name. ECF No. 43 at 8. NYPD officers also found the hat and sunglasses that Robber-1 wore, which were captured during the surveillance video from the July 7, 2023 robbery. *Id*. Therefore, the search of the Defendant's car

11

was valid under the "automobile exception" to the warrant requirement, which permits officers to search a vehicle without a warrant when "there is probable cause to believe [the] vehicle contains evidence of criminal activity." *Arizona v. Gant*, 556 U.S. 332 (2009) (citations omitted).

### III.   Inventory Search of Defendant Rumph's Car

This Court finds that the inventory search conducted of Rumph's car following his arrest was valid. An inventory search is "an incidental administrative step following arrest and preceding incarceration" that "constitutes a well-defined exception to the warrant requirement." *Illinois v. Lafayette*, 462 U.S. 640, 643–44 (1983); *see also id*. at 646 ("At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed."). Where the police lawfully take personal property into their custody, they are permitted to conduct an inventory search of the property without a warrant or probable cause to believe it contains contraband. *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir.2008). "In some cases, the government successfully invokes the inevitable discovery exception on the basis of inventory search procedures. In such cases, the court typically concludes that even if the invalid search had not been conducted, the evidence would nonetheless have been discovered in the course of a valid inventory search conducted pursuant to standardized, established procedures." *United States v. Mendez*, 315 F.3d 132, 137–38 (2d Cir.2002). Key to the Fourth Amendment analysis, impoundments and inventory searches do not need to be justified by probable cause, but only on a showing of reasonableness. *United States v. Rivera*, 700 F. Supp. 3d 60, 73 (S.D.N.Y. 2023).

In evaluating whether an inventory search following impoundment satisfies the Fourth Amendment, courts engage in two distinct inquiries: "first, whether the impoundment of a car is reasonable; and second, if so, whether the subsequent search of the car after the impoundment is

reasonable," *Lyle*, 919 F.3d at 730 n.2 (citing *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996) ("[T]he decision to impound (the 'seizure') is properly analyzed as distinct from the decision to inventory (the 'search').")) As to the first inquiry, the Second Circuit inquires whether the "decision to impound is reasonable ... based on all the facts and circumstances of a given case." *Id*. at 731 (citation omitted). Officers "may exercise their discretion in deciding whether to impound a vehicle, 'so long as that discretion is exercised ... on the basis of something other than suspicion of evidence of criminal activity.'" *Id*. at 728 (quoting *Colorado v. Bertine*, 479 U.S. 367 (1987)). Thus, an officer cannot act "solely for the purpose of investigation." *Id*. at 731. As to the second inquiry, for an inventory search to be reasonable under the Fourth Amendment, the officer conducting the search must "act in good faith pursuant to 'standardized criteria ... or established routine.'" *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). The existence of such a procedure may be proven by reference to "either written rules and regulations, or testimony regarding standard practices." *Id*. (citations omitted). "The policy or practice governing inventory searches should be designed to produce an inventory." *Wells*, 495 U.S. at 4.

Here, after the valid traffic stop, Detective Ayala ran Rumph's license to check outstanding warrants. Thereafter, Detective Ayala learned that there was an active Arrest I-Card, which indicated that there was probable cause to arrest Rumph for an unrelated offense in the 32nd Precinct. Hear. Tr. 42-43. NYPD protocol then required Detective Ayala to arrest Rumph, take him to the 32nd Precinct to process his arrest, take his vehicle into police custody, and conduct an inventory search of the vehicle. *Id*. at 43, 47-48. The NYPD protocol also explains why the vehicle was not impounded solely for purposes of the investigation. Police would have taken custody of the vehicle as "arrest/investigatory evidence" based on the open I-card. *See*

13

NYPD Patrol Guide 218-19 (directing officers to seize and invoice vehicles as arrest evidence when arrests are made). Detective Ayala similarly testified that he conducted the inventory search consistent with NYPD protocol, documented the returned property with photographs, and invoiced seized items. Hear. Tr. at 106-108. This is sufficient to conclude that the inventory search was valid under the Fourth Amendment.

    Defendants, however, argue that the evidence obtained as a result of the illegal stop and search of Rumph's vehicle are "fruit of the poisonous tree". This argument is unpersuasive. Following Rumph's valid stop for both a red-light violation and reasonable suspicion that his car was the Getaway Car in the July 7, 2023 robbery, NYPD protocol would have resulted in the inevitable discovery of the challenged evidence. Under the "inevitable discovery" doctrine, evidence that is obtained during an unreasonable search and seizure will not be suppressed "if the government can prove that the evidence would have been obtained inevitably" without the constitutional violation. *Nix v. Williams*, 467 U.S. 431, 447 (1984). The inevitable discovery doctrine is applied only where a court can find with "a high level of confidence that each of the contingencies required for the discovery of the disputed evidence would in fact have occurred." *United States v. Heath*, 455 F.3d 52, 55, 59 (2d Cir.2006). Proof of inevitable discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." *Nix*, 467 U.S. at 444 n. 5. The Government must "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[.]" *Id*. at 444. Here, once Rumph was arrested on an open Arrest I-card and taken into custody, NYPD officers would have inevitably found the vehicle registration, Robber-1's hat, sunglasses, and two cellphones during their inventory search at the 32nd precinct.

14

*See* NYPD Patrol Guide, Procedures 218-19, 218-20, 218-21. Notably, NYPD inventory search policy directs officers to "s]earch the interior of the vehicle thoroughly," including the glove compartment, console, trunk, and under the hood). *Id*. at 218-13. Therefore, the inventory search was permitted under the Fourth Amendment.

### IV.  Search Warrants and *Franks* Hearing

This Court declines to issue a *Franks* hearing regarding Defendant's challenge to the affidavits supporting the Phone and Cellsite Warrants. Ordinarily, a search or seizure pursuant to a warrant is presumed valid. *United States v. Awadallah*, 349 F.3d 42, 64–65 (2d Cir. 2003). In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure. *See Franks v. Delaware*, 438 U.S. 154, 164–72 (1978); *United States v. Canfield*, 212 F.3d 713, 717 (2d Cir.2000). To be entitled to a *Franks* hearing, a defendant must make "a substantial preliminary showing" of (1) falsity, "that a false statement ... was included by the affiant in the warrant affidavit," (2) knowledge, that the affiant made the allegedly false statement "knowingly and intentionally, or with reckless disregard for the truth," and (3) materiality, that "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674; *see United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021). A defendant's obligation to prove these elements is well established in this Circuit. *See McKenzie*, 13 F.4th at 236; *see also* United States v. Sandalo, 70 F.4th 77, 85 (2d Cir. 2023).

### I.  False Statements in Phone and Cellsite Warrants

As to the first factor in the *Franks* analysis, this Court finds that the Defendant has not made a preliminary showing that the warrant affidavits contain false statements. The Defendant argues that Detective Ayala's statement that "Rumph's physical appearance resembles Robber-

15

1" is misleading because it erroneously suggests that Rumph was Robber-1. The Defendant also argues that the warrants contain misinformation regarding the reason why Rumph was stopped on October 1, 2023 when Detective Ayala swore that officers "conducted a traffic stop of Vehicle-1 after the driver ran a red light." Levine Aff. ¶ 15. Here, the warrant affidavits contain no false statements because Detective Ayala qualifies his statement that the Defendant resembles Robber-1and specifies that that Rumph also has a limp which resembles Robber-1's limp. Additionally, Detective Ayala credibly testified that Rumph committed a traffic violation on October 1, 2023, which was one of the two reasons why Rumph was stopped.

## II.     Knowingly and Intentionally Making a False Statement

As to the second factor, this Court finds that the Defendant has not made a substantial preliminary showing that Detective Ayala deliberately and misleadingly represented that Defendant Rumph was Robber-1 and omitted material information where he concluded that Defendant Rumph was not Robber-1. To invoke the *Franks* doctrine, Rumph must show that there were intentional and material misrepresentations or omissions in Detective Ayala's warrant affidavit. *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). A misrepresentation or omission is intentional when "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." *Canfield*, 212 F.3d at 717–18 (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir.1998)). The Defendant argues that Detective Ayala acted with deliberate disregard to material information that he knew at the time which was that Defendant Rumph was not Robber-1. ("He doesn't … like right now, just looking based off his goatee, he doesn't fit the guy that went in with the gun, but we'll figure that out.") ECF No. 22 at 8; *see also* Levine Aff. ¶ 12. Defendant also argues that the warrant affidavits include misinformation that suggests that Rumph was pulled over due to a traffic stop. ECF No. 22 at 9.

Here, the Defendant has failed to make a substantial preliminary showing that Detective Ayala deliberately and intentionally made recklessly false statements in his warrant affidavits. After processing the car at the 32nd precinct, Detective Ayala found additional evidence that supported that Rumph could be Robber-1, including the hat and glasses that matched those used in the July 7, 2023 robbery. In addition, during processing Rumph's arrest, Detective Ayala also noticed that Rumph has a limp like Robber-1. While the Defendant argues that Detective Ayala should have known that Rumph is much taller than Robber-1, there is no evidence that shows that Detective Ayala was aware of the height difference at the time of the warrant affidavits. Collectively, these facts support Detective Ayala's view that the Defendant resembles Robber-1 and therefore are not misrepresentations made with a deliberate or reckless disregard for the truth. *Canfield*, 212 F.3d at 717–18.

### III.  Material Statements to Finding of Probable Cause

As to the third and final factor, this Court finds that the Defendant has failed to make a substantial preliminary finding that the challenged statements were material to the court's finding of probable cause. *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). It is material when "the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *Canfield*, 212 F.3d at 718. Here, there was still enough evidence to support probable cause for Judge Figueredo to issue the search warrants. To determine materiality, courts "disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." *Id*. (internal citation and quotation marks omitted). If the amended affidavit supports probable cause, the inaccuracies were not material and suppression is not warranted. *Id*. When removing the information contained in Detective Ayala's search warrant affidavits that suggests that Defendant Rumph resembles

17

Robber-1, there was still probable cause to stop and search the vehicle based on the traffic violation and resemblance of Rumph's vehicle to the Getaway Car. Since "there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (quoting *Franks*, 438 U.S. at 171–72).

Indeed, Defendant Rumph does not meet the "substantial preliminary showing" standard regarding falsity, knowledge, and materiality by a preponderance of the evidence to invoke the *Franks* doctrine. *Id.* (quoting *Franks*, 438 U.S. at 155–56). Therefore, this Court denies Defendant Rumph's request for a *Franks* hearing.

## CONCLUSION

For the reasons set forth above, Defendant's motion to suppress and request to controvert the search warrants is **DENIED**. The Clerk of Court is hereby directed to terminate ECF No. 20.

**SO ORDERED.**

**Dated: October 16, 2024**
         **New York, NY**

                        **ANDREW L. CARTER, JR.**
                        **United States District Judge**