**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

*Tamara Giwa*
Executive Director

*Jennifer L. Brown*
Attorney-in-Charge

April 4, 2025

**Via ECF and Email**
Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   **United States v. Robert Rumph**
      **23 Cr. 603 (ALC)**

Dear Judge Carter,

     We write to oppose the government's proposed use of two enhancements in calculating the guidelines in the above-captioned case: U.S.S.G. § 2B3.1(b)(2)(C) (a five-level increase for brandishing a firearm) and U.S.S.C. § 2B3.1(b)(4)(B) (a two-level increase for physical restraint). See Dkt. No. 58 ("Gov't Ltr."). As the Court is aware, the parties specifically anticipated this guidelines dispute in the plea agreement. Under the law and the facts of this case, the government cannot establish by a preponderance of the evidence that the robber's actions inside the store were within the scope of Mr. Rumph's agreement with the robber, nor that they were they foreseeable to Mr. Rumph. Therefore, the enhancements do not apply.

     Because the robber's actions were captured on video, there is no question that the robber did, in fact, brandish an item that appeared to be a firearm and arranged the physical restraint of a store clerk during the robbery. See GX-1, GX-15. But those undisputed facts do not establish that the two enhancements in question apply to Mr. Rumph. Mr. Rumph did not brandish anything in the store, nor did he physically restrain anyone – indeed he was not even present when those actions were taken by the robber. The government cannot establish by a preponderance of the evidence that Mr. Rumph agreed to the full scope of the robbery conspiracy, as opposed to simply being the getaway driver, and the government cannot establish by a preponderance of the evidence that the actions taken by the robber inside the store were reasonably foreseeable to Mr. Rumph. Therefore, the government's application for both enhancements must fail.

Legal Standard and Argument

The government bears the burden of proving the facts necessary to support a sentencing enhancement under the Guidelines by a preponderance of the evidence. United States v. Banol-Ramos, 566 F. App'x 40, 42 (2d Cir. 2014) (citing United States v. Archer, 671 F.3d 149, 161 (2d Cir.2011)).

A defendant is "accountable for the conduct (acts and omissions) of others" when the conduct is: "(i) within the scope of the jointly undertaken criminal activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Regarding the scope of the agreement, "the accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity." U.S.S.G. § 1B1.3 App. n. 3(B). "Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant." Id. The Sentencing Commission specifically pointed out that "the criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are not necessarily identical." U.S.S.G. § 1B1.3 App. n. 3(D).

Here, for the enhancements to apply, the government must first establish the scope of the criminal activity "jointly undertaken" by Mr. Rumph and the robber. If Mr. Rumph only agreed to be the getaway driver (and even if he also loaned him a bag beforehand, as discussed more fully below), the scope of their "joint" activity would just be the flight from the robbery, not the whole event. Thus, this case is easily distinguishable from the example in the guidelines that the government relies upon. See id.; Gov't Ltr. 14. In the example, the premise is that two defendants "agree[d] to commit a robbery." See id. Here, the government cannot establish that basic premise: that Mr. Rumph agreed to any part of the robbery except being the getaway driver. As such, any actions taken by the robber outside the scope of that joint agreement are not Mr. Rumph's legal responsibility.

The next question is regarding foreseeability. To determine reasonable foreseeability, the courts must look at the specific roles and actions of each co-conspirator – not the type of crime. The government argues that "the nature of the offense' is itself probative of whether a coconspirator's conduct is reasonably foreseeable to the defendant" by citing to Unites States v. Graham, 493 F. App'x 162, 168 (2d Cir. 2012), judgment vacated on other grounds, 570 U.S. 913 (2013). See Gov't Ltr. 14. The government implies that, in Graham, the use of a weapon was reasonably foreseeable because the relevant "nature of the offense" was that it was "a robbery of a fur store." See id. But that was not the Circuit's holding. In Graham, one co-conspirator (Graham) was held responsible for the assaultive actions of his co-conspirator (Redrick) because the crime itself had been "'planned and organized' by Graham." 493 F. App'x at 168. Indeed, Graham was also given an enhancement for his "leadership role in the conspiracy." Id. at 167. In other words, the Second Circuit made clear that reasonable foreseeability is a specific factual inquiry.

There is no dispute that Mr. Rumph agreed to, and did, help the robber flee the scene after the robbery. Mr. Rumph pled guilty to violating 18 U.S.C. § 371 for his participation in a

2

conspiracy and at his plea, he specifically said that he "agreed to provide transportation" for a person who committed a robbery so that the robber "[could] leave the scene." Gov't Ltr. 15. The surveillance footage from July 7, 2023 demonstrates that he did just that. Indeed, Mr. Rumph's role as the "getaway driver" has long been adopted by the government in this case. See, e.g. Dkt. Nos. 26, 34. But those facts do not and cannot establish that Mr. Rumph agreed to the full scope of the robber's intended criminal activity, nor that Mr. Rumph could reasonably foresee all of the robber's actions inside the store.

In arguing that Mr. Rumph agreed to the full scope of the robber's robbery and that all of the actions the robber took were foreseeable to Mr. Rumph, the government makes three arguments, see Gov't Ltr. 15-17. All three fail. For the reasons described below, the government has not established the applicability of either enhancement by a preponderance of the evidence.

First, the government argues that Mr. Rumph was involved in the "preparation for [and] planning" of the robbery. Gov't Ltr. 15. But there is a substantial dearth of evidence regarding "the extent of [Mr.] Rumph's pre-robbery involvement." Id. The only pre-robbery facts the government avers are that Mr. Rumph was cleaning his car on 168th Street for about 45 minutes before the robbery. We also know that the robber did not travel with him to that location. See GX-16 (a bag is on the front passenger seat, not a person). Just minutes before the robbery, the robber walked from the direction of where Mr. Rumph's car was parked; we do not know what, if any, words they exchanged, or how long they interacted, if at all. Those facts simply do not establish "a significant level of premeditation," Gov't Ltr. 15. To the contrary, the evidence of "premeditation" of anything other than an agreement to pick the robber up after the robbery, by driving over at a specific point in time, is completely non-existent. The defense is not arguing that Mr. Rumph "happen[ed] to be in the right place at the right time to help Robber-1 get away," Gov't Ltr. at 16; the two people clearly made some agreement to ensure that Mr. Rumph pulled up outside the store at the time the robber desired. But that fact alone does not come close to establishing the government's next logical leap: that because Mr. Rumph agreed to be the getaway driver, "he had a full understanding of the robbery plan." See id. The government has offered insufficient evidence to support that contention.

Indeed, the evidence from before the robbery shows that Mr. Rumph and the robber had entirely different roles and agendas that day. Just look at their appearances. The robber concealed his appearance from head to toe: he wore a long sleeve black shirt and long black pants (even though it was the middle of summer); he also wore a baseball hat, sunglasses, and a medical face mask, which obscured his entire head and face; and he wore purple latex gloves so that he would not leave fingerprints and so that none of his skin was visible. Mr. Rumph, by contrast, was wearing a white tank top, tan shorts, and did not conceal any part of himself. The robber was trying to obfuscate his appearance; Mr. Rumph was not. Also look at their actions before the robbery: the robber wore his full concealment get-up when he approached Mr. Rumph's car, and when he walked down to the smoke shop he robbed, shortly before the robbery. Mr. Rumph, in contrast, parked his car in the neighborhood and was openly washing his car, in full view of all neighbors, bystanders, and surveillance cameras for 45 minutes. Moreover, the car Mr. Rumph was washing was highly unique and recognizable: it was all red with two white doors. The differences between the pre-robbery behavior of the robber and Mr. Rumph demonstrate how different their plans and roles were that day.

The government's second argument about scope and foreseeability rests on the government's contention that the robber used a bag during the robbery that looked like one Mr. Rumph may have had in his car before the robbery. See GX-15, GX-16. In support of this argument, the government points to a single zoomed-in screenshot of an unpreserved surveillance video of Mr. Rumph's front passenger seat, see GX-16, Gov't Ltr. n. 3. The Government says that GX-16 shows "distinct white lettering" that is later seen on the robber's bag. But that screenshot is too blurry, and shows only a small portion of the item, and is, therefore, insufficient proof by a preponderance of the evidence.

But, even if the Court finds that it was the same bag, the government cannot and has not possibly established that the alleged gun or the duct tape were in the bag when Mr. Rumph possessed it. Indeed, GX-16 makes it impossible to see the contents or shape of the bag when it was in the car. Even if the robber retrieved the bag from Mr. Rumph's car, there is simply <u>no evidence at all</u> that the items in question were already in the bag, as opposed to brought to the scene by the robber, who then used the bag in Mr. Rumph's car to carry the items. Indeed, the evidence demonstrates that it is far more likely that the robber brought the tools of his robbery to the robbery himself – because he came otherwise completely prepared. He came disguised from head to toe, including long-sleeve clothing, a hat, sunglasses, a mask, and gloves. A person who made those kinds of premeditated arrangements to commit a robbery probably also brought the tools to use during the robbery, including the object that appeared to be a firearm and duct tape. And, because we don't know how or when the objects got in the bag, perhaps the robber initially carried them in a smaller bag, that he placed inside the black bag? Or maybe he threw out his bag and used the one from Mr. Rumph's car instead? Or maybe he was holding the objects in his waistband or hand when he approached Mr. Rumph and asked him if he borrow a bag so he would look less conspicuous? When the government cannot eliminate those (far more likely) reasonable possibilities, it cannot sustain its burden.

Third, the government argues that even if Mr. Rumph "never actually saw the gun or duct tape," it was still foreseeable to him that the robber would use those items because of the nature of this robbery, i.e. that the robber was planning to rob "a smoke shop in a dense urban area" that was "operated by one or more employees and potentially occupied by other customers." Gov't Ltr. 17. But that again assumes facts the government has failed to establish: there is <u>no</u> evidence whatsoever that the robber shared those details with Mr. Rumph. (In fact, as the government's map and the surveillance footage demonstrates, the robber did not have Mr. Rumph pick him up in front of the smoke shop (which was located on 167th Street); he picked a spot around the corner, on Sherman Avenue.) In this case, there is none of the type(s) of evidence the government often has in robbery cases, like text messages planning the robbery or evidence of scoping out the location in advance; here there is not even proof that the robber and Mr. Rumph exchanged more than a few words when the robber walked by Mr. Rumph's car. At most, the only inference that can be draw from the evidence in this case is that the robber told Mr. Rumph to pick him up at a certain location (i.e. on Sherman Avenue) at a certain time (i.e. a few minutes after the robber walked by Mr. Rumph's car). Anything else is conjecture and has not been established by a preponderance of the evidence.

The two cases cited by the government in this section demonstrate the types of facts that exist in other cases, i.e. those that do make out a joint criminal endeavor and foreseeability – and

are nothing like the facts here.  In Graham, the defendant received an enhancement for his leadership role in the conspiracy, which he earned by "identifying the…target, directing his recruits to obtain the blue mink coat, ordering Thompson into the car and shooting at him during the kidnapping, and giving Thompson a gun to carry out the 'payback' robbery on Canal Street." 493 F. App'x at 167.  Given that leadership role, the court held that when his co-defendant hit the owner of the store "in the head with a gun during the course of the robbery," it was foreseeable to Graham.  Id. at 168.  Here, the government has no such evidence of leadership or detailed planning and thus, Graham does not support the enhancement application in this case.  Similarly, in United States v. Burton, 126 F.3d 666, 679 (5th Cir.  1997), the court did not hold one co-defendant responsible for the other's conduct "given the nature of bank robbery," as the government's letter misleadingly suggests.  See Gov't Ltr. 17.  Instead, the court found that because both defendants entered the bank and both "waved guns around during the robbery," it was reasonably foreseeable to one defendant that the other would "threaten[] to kill bank employees if they did not cooperate."  Burton, 126 F.3d at 679.  Again, the scope of the agreement and the foreseeability among two bank robbers who both enter a bank waving guns versus the actions of Mr. Rumph and the smoke shop robber could not be less similar.  The cases cited by the government support the defense's position that the enhancements cannot be proven in this case.

Finally, the government points to crimes that Mr. Rumph committed 30 to 40 years ago[1] to argue that because he committed robberies back then, it is more likely that he knew the details of this robber's robbery plans on July 7, 2023.[2]  This argument, too, should fail for several reasons.  First, the case law does not support the government's propensity argument.  The single case cited by the government – United States v. Woodward, 64 F. App'x 290, 292 (2d Cir. 2003) – does not stand for the proposition that a person's criminal history can help establish the enhancements in question here.  To the contrary, in that case, the Circuit found the fact that "co-conspirators' testimony as to prior use of guns and the visibility of guns prior to the start of the robbery," was (obviously) relevant to the enhancement.  Woodward, 64 F. App'x at 292.  Second,

---

[1] We do not dispute that Mr. Rumph committed a slew of crimes in the 1980's and 90's, and that he has a number of convictions for robbery, but the government's list on page 13 of its brief is still inaccurate and misleading.  The government stated Mr. Rumph "has numerous prior robbery convictions" and then listed seven different bullet points referencing prior cases.  But of those seven, four were not robbery convictions; three were convictions for grand larceny – and one was a misdemeanor petit larceny.  In the remaining three bullet points, the government labeled all six counts contained therein as "robberies" – when three convictions were for completed robbery and three were convictions for attempt.  We don't raise this to minimize Mr. Rumph's criminal history – we have accepted each conviction in the PSR and the plea agreement – but it is wholly unnecessary and inappropriate for the government to exaggerate his history.

[2] The government also points to arrests from 1995 that did not result in criminal convictions.  See Gov't Ltr. 13.  The defense objected to the inclusion of these arrests in ¶¶ 59-63 of the PSR because unproven arrests create an opportunity for undue prejudice.  Here, the government proved exactly the risks of leaving unproven, prejudicial information in a PSR: the government will use it against you.  See Gov't Ltr. 13.  We maintain our objection and ask the Court not to consider those arrests at sentencing.

as a factual matter, the government's argument completely overlooks the time that elapsed over the last 30 to 40 years and Mr. Rumph's pro-social progress that he made upon his release from prison – including that he worked hard in demanding jobs to support himself.  Third, the government's own logic fails on its face: if he is the practiced, prolific robber that they claim he is, why did he wear no disguise, spend time openly in the vicinity, and drive his extremely unique car to participate in this event?  If he was relying on his robbery history, it would make sense that he would have behaved more covertly.  Fourth and finally, the government has no information that the robber, the instrumentalities, the location, or anything else from July 7, 2023 had any factual overlap with the 30-40 year old robberies.  In the absence of any such connection, the probative value of Mr. Rumph's criminal history is extremely limited for the question at hand, i.e. was it foreseeable to him that the robber on July 7 would brandish an item that appeared to be a firearm or physically restrain anyone.

Thus, the government's three arguments regarding the scope of Mr. Rumph's agreement with the robber and the foreseeability of the robber's actions all fail.

In addition, there is another reason why the firearm enhancement cannot be applied here.  Even if the Court were to find that the robber's actions inside the store were somehow all foreseeable to Mr. Rumph, the government still has not established the firearm enhancement in U.S.S.G. § 2B3.1(b)(2)(C) – because it has offered no evidence that the object that looks like a firearm on the video was, in fact, "a firearm."

U.S.S.G. § 1B1.1 App. n. 1(H) defines "firearm" as "(i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device."

Here, there is simply no information in the record that the gun-shaped object seen on the video surveillance was actually a firearm, i.e. a device that could expel a projectile.  There is no evidence in the record that it was not just as likely a prop gun or a toy gun or anything else shaped like a gun that is not a real firearm.[3]   Using an object that looks like a gun – even if it is brandished in furtherance of the robbery – is not sufficient to establish the legal standard for this enhancement.  It should not be applied here.

Respectfully submitted,
/s/
Sylvie Levine
Attorney for Mr. Rumph
212-417-8729

---

[3] For this reason, "dangerous instrument" in U.S.S.G. § 2B3.1(b)(2)(D) would also fail to apply.